# EXHIBIT A

Jeremy M. Dwork (SBN 254013)
Golnar J. Fozi (SBN 167674)
Fozi Dwork & Modafferi, LLP
5942 Priestly Drive, Suite 100
Carlsbad, CA 92008
Tel: (760) 444-0039; Fax: (760) 444-0130
Email: jdwork@fdmattorneys.com
    gfozi@fdmattorneys.com

Attorneys for Plaintiff,
Kevin Read

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
8/18/2025 1:57:30 PM

Clerk of the Superior Court
By J. Centeno    ,Deputy Clerk

## SUPERIOR COURT OF CALIFORNIA

## COUNTY OF SAN DIEGO, NORTH COUNTY DIVISION

| | |
|---|---|
| Kevin Read, an individual,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON.COM, LLC., a corporation; XIAOHE ELECTRIC TECHNOLOGY (TIANJIN) CO., LTD., a corporation; FUCARE, a corporation; FUCARE BIKE, a corporation; FUCARE BIKE INC. a corporation; FUCARE, INC., a corporation; FUCARE ELECTRIC TECHNOLOGY CO.; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No.: 25CU043563N<br><br>**COMPLAINT FOR DAMAGES**<br><br>**DEMAND FOR JURY TRIAL**<br><br><br><br><br><br>Unlimited Jurisdiction: Amount in controversy exceeds $25,000. |

COMES NOW the Plaintiff, KEVIN READ, and for causes of action against the Defendants, and each of them, complains and alleges as follows:

### JURISDICTION AND VENUE

1.    All of the facts complained of herein occurred within the State of California or under circumstances such that this Superior Court has jurisdiction. The amount in controversy exceeds $25,000.00.

1

**COMPLAINT FOR DAMAGES**

2. Most of the relevant events giving rise to plaintiff's claims occurred within the area of San Diego County served by its North County Division. Venue is therefore proper under California Code of Civil Procedure section 395.

### THE PARTIES AND FACTUAL BACKGROUND

3. At all times relevant, plaintiff KEVIN READ was and is a resident of the County of San Diego, State of California.

4. On or about August 10, 2022, plaintiff purchased, through the website for Defendant AMAZON.COM, LLC, what was represented on the website to be a Fucare FW-11 "Electric Bike" or "E-Bike." Throughout this complaint, plaintiff will refer to this product – using quotation marks – as an "Electric Bike" or "E-Bike" because information developed subsequent to plaintiff's purchase makes it evident that the product was falsely and fraudulently marketed by defendants to plaintiff and the public as an "Electric Bike" and/or "E-Bike" and that the product plaintiff purchased violates California laws for the definition, specifications, and power capabilities for "Electric Bikes" and/or "E-Bikes" sold in the state, as explained later in this complaint. [1]

5. Plaintiff is informed and believes that at all times relevant, Defendant AMAZON.COM, LLC (hereinafter "AMAZON.COM") was a corporation doing business in the State of California. Plaintiff researched, communicated, ordered, paid for, and sought repairs of the Fucare FW-11 "E-Bike" using Defendant AMAZON.COM's website and further relying on AMAZON.COM's consumer services. Indeed, AMAZON.COM guaranteed the purchase and merchantable quality of the subject "E-Bike" even in the event the other defendants failed to perform.

6. Plaintiff is informed and believes that at all times relevant, Amazon Payments, Inc. (hereinafter "Amazon Payments") was a corporation doing business in the State of California, and is a subsidiary of Defendant AMAZON.COM. Plaintiff is informed and believes that Amazon

---

[1] Defendants consistently market the product at issue as a "Bike" rather than a "Bicycle" - which is the terminology used by California statute. Defendants' use of the term "Bike" is synonymous with "Bicycle", as attested to by defendants' own statement on their marketing material: "Have you ever stumbled upon the terms "e-bike" and "electric bike" while browsing for bicycles? You might wonder if they represent two distinct types of vehicles. Well, fret not, because you're not alone in this confusion. **The short answer is no. E-Bike and electric bike are simply interchangeable terms use to describe bicycles equipped with an elective motor.**" (Emphasis in original.)

2

**COMPLAINT FOR DAMAGES**

Payments provides payment processing services for transactions conducted on Defendant AMAZON.COM's website and on AMAZON.COM's behalf. As part of the initial financial transaction in this case relating to his Fucare FW-11 "E-Bike," plaintiff received an email from Defendant AMAZON.COM telling him that "The payment for your invoice is processed by Amazon Payments, Inc. P.O. Box 81226 Seattle, Washington 98108-1226."

7.      Plaintiff is informed and believes that at all times relevant, Amazon Service Contracts, Inc. (hereinafter "Amazon Service Contracts") was a corporation doing business in the State of California, and was an agent of, or affiliated with, Defendant AMAZON.COM in some fashion unknown to plaintiff at this time. Amazon Service Contracts describes itself as the "trusted partner" of Asurion Services, LLC (hereinafter "Asurion"), the company from whom plaintiff bought an "Extended Warranty" on the "E-Bike" that he purchased through (and marketed by) Defendant AMAZON.COM. In turn, Asurion Services, LLC used a company called Light Electric Vehicle Technologies Inc. (hereinafter "LEVT") to carry out warranty services on Asurion's behalf with respect to the "E-Bike" that Plaintiff purchased through defendant AMAZON.COM.

8.      At all times relevant, defendant AMAZON.COM, and its agents/affiliates Amazon Services Contracts and Amazon Payments had such a significant role in the sale, advertising, distribution, and introduction into the stream of commerce of the defective Fucare FW-11 "E-Bike" that injured plaintiff that it can fairly be said – in the words of Justice Wiley's concurring opinion in Loomis v. Amazon.com LLC (2021) 63 Cal. App. 5th 466, 496 – "Amazon *is* the distribution system." The method by which Plaintiff purchased and communicated about the subject product was through AMAZON.COM's web-based retail store, services and platforms.

9.      Some of the other circumstances concerning, and the entities involved in, the chain of distribution of the "E-Bike" that injured plaintiff are presently unknown to him and must presently be plead on information and belief. Plaintiff is informed and believes that at all times relevant, Defendant XIAOHE ELECTRIC TECHNOLOGY (TIANJIN) CO., LTD (hereinafter "XIAOHE") was a business entity, whether corporate or otherwise, doing substantial and repeat business in the State of California with its principal place of business in the United States believed to be in Rancho

3

**COMPLAINT FOR DAMAGES**

Cucamonga, California. Plaintiff is informed and believes that XIAOHE designed, manufactured and imported into California a line of "E-Bikes" carrying the brand name "Fucare", including the defective Fucare FW-11 that injured plaintiff.

10. Plaintiff is informed and believes that at all times relevant, Defendants FUCARE, FUCARE BIKE, FUCARE BIKE, INC. and FUCARE ELECTRIC TECHNOLOGY CO. (hereinafter collectively "FUCARE") are entities, whether individual, corporate, associate or otherwise doing business in the State of California and in particular, importing, marketing, and selling a line of "E-Bikes" carrying the brand name "Fucare", including the defective and dangerous Fucare FW-11 that injured plaintiff. Plaintiff is informed and believes that the principal place of business for FUCARE is in Rancho Cucamonga, California.

11. The true names and capacities, whether individual, corporate, associate or otherwise of Defendants DOES 1 through 100, inclusive, are unknown to plaintiff, who therefore, sues said defendants by such fictitious names under Code of Civil Procedure Section 474. Plaintiff is informed and believes and thereon alleges that each of the defendants herein designated as a DOE is legally culpable and responsible in some manner for the events and happenings alleged herein and legally caused the injuries and damages alleged below.

12. Plaintiff is informed and believes that at all times relevant, Defendant DOES 1 through 5 were California business entities that served as the importer into California of the defective Fucare FW-11 that injured plaintiff.

13. At all times herein mentioned, each defendant was acting in the course and scope of their agency and/or employment with the other defendants. Defendants are therefore vicariously liable for the acts of each of the remaining defendants herein.

14. In addition, each defendant was at all times acting as the ostensible agent of the remaining defendants, and was doing so at the behest of and with the approval of those defendants. At all times herein relevant, plaintiff reasonably and without fault relied on the representations made by the defendants about the agency and employment of each of the remaining defendants.

4

**COMPLAINT FOR DAMAGES**

## THE ILLEGALITY OF THE VEHICLE DEFENDANTS MARKETED AND SOLD TO PLAINTIFF

15.     At its most basic level, an Electric bicycle, or E-bike, is a bicycle equipped with an electric motor that assists with, or replaces, pedaling by a rider.  Per California Vehicle Code §312.5, first enacted in 2015, in order for a product to qualify as an E-bike, it must fall within one of three classes, defined primarily by the size and speed capability of the motor.  These three classes of E-products are considered "bicycles" rather than motorcycles, motorized bicycles, mopeds, or other types of "motor vehicles" which are subject to significant regulatory controls.  As "bicycles," properly classified E-Bikes are not subject to requirements like driver's licenses, registration, insurance, and various safety equipment that apply to "motor vehicles." (See Veh. Code, §24016(b)).  Thus, advertising a product as an E-bike (even when it is not legally characterized as such) dramatically increases the marketability of the product to mass consumer base.

16.     Of the three legal classes of E-bikes, Class 1 and Class 3 are for E-bikes that require pedaling – these products offer what is called "pedal-assist". They are not equipped with throttles that engage the motor *without pedaling*. Rather, they may "provide[ ] assistance *only when the rider is pedaling*[.]" The difference between Class 1 and Class 3 "pedal-assist" E-bikes is the top motor-assisted speed.  For Class 1, the motor cannot be capable of providing assistance above 20 miles per hour. (See Veh. Code, §312.5(a)(1)).  For Class 3, the motor must cease to provide assistance when the product reaches the speed of 28 miles per hour. (See Veh. Code, §312.5(a)(3)). Because Class 3 E-bikes can achieve a higher motor-assisted speed, riders must be at least 16 years old and wear a helmet. (Veh. Code, §21213(a)–(b)). Unlike Class 1 or 3, Class 2 is for E-bikes with throttles (e.g., a lever, button or mechanism on the handlebar).  To qualify as a Class 2 E-bike, the motor cannot be capable of providing assistance when the E-bike reaches 20 miles per hour. (See Veh. Code, §312.5(a)(2)).  If the motor is capable of working above that limit, *the vehicle is not a Class 2 E-bike* and is subject to the requirements of the type of motor vehicle it is.

17.     California law requires E-bike manufacturers to designate and disclose the class of the E-bikes they are selling and to prominently display that class on the E-bike.  Specifically, they

5
**COMPLAINT FOR DAMAGES**

are required to "permanently affix[], in a prominent location, to each electric bicycle" a label with the "classification number, top assisted speed, and motor wattage of the electric bicycle." (Veh. Code, §312.5(c)).

18.    In the interest of profits, Defendants herein have been misleading consumers, including plaintiff, by selling motorcycles as "E-Bikes" even though their motors are capable of (and specifically designed to achieve) speeds well exceeding the legal limits for electric bicycles in California. Plaintiff is informed and believes that Defendants have marketed thousands of vehicles in California and other states as "E-bikes", when they are not – and they know they are not. Defendants' conduct violates the law, is false and misleading, and expressly prohibited by California law.

19.    Defendants intentionally designed and sold its "E-Bikes", including the one purchased by plaintiff, with motors that can be manually throttled not only after the vehicles reach 20 miles per hour, but also after the vehicles reach 28 miles per hour. Defendant FUCARE's website, which is readily available by link from the AMAZON.COM store, instructs readers on how to modify the "E-Bike" so that the motor propels it above 28 miles per hour. Because the motors on Defendants' "E-Bikes" can propel the vehicles to these speeds, they are not E-bikes under California law – and "shall not be advertised, sold, offered for sale or labeled" as such. (See Veh. Code 312.5(d).) Defendants know this and have intentionally chosen to violate the law in the interests of profits. Defendants XIAOHE and FUCARE expressly acknowledge on their website that "E-Bikes" must not exceed 28 mph, but then publicly state their intent to circumvent legal requirements without hesitation or ambiguity:

Think your Fucare ebike is stuck in slowpoke mode? Think again! These zippy rides actually come pre-programmed with a bit of a hidden reserve.

[…]

COMPLAINT FOR DAMAGES

(Now, hush hush, they can technically hit 32 mph, but safety first, right? We don't want to tangle with the law.)

20. AMAZON.COM ratifies and facilitates this misconduct by authorizing, hosting and perpetuating the offering of FUCARE "E-Bikes" which routinely state they are designed and capable of exceeding maximum speeds allowed in California, but intentionally marketed, sold and shipped directly to California consumers such as plaintiff.

21. Defendants have engaged in an illegal scheme to design, manufacture, market, distribute and sell products they know violate the law and are dangerous to the consumer public.

### PLAINTIFF IS INJURED BY DEFENDANTS' "E-BIKE"

22. Almost immediately upon Plaintiff receiving the aforesaid "E-Bike", he began experiencing problems with it, and started communicating with Defendant AMAZON.COM and some of its affiliates/co-defendants in what would turn out to be a futile effort to determine the defect with the "E-Bike" and to get it repaired. His concerns were rejected by defendants, and each of them. Plaintiff was told that there was nothing incorrect about his "E-Bike", and that defendants refused to accept it back. Accepting defendants' representations that the product was correct and therefore safe, Plaintiff rode the product in a reasonable and foreseeable manner. Unfortunately, Defendants' callous and willful disregard for the safety of consumers (plaintiff in particular) resulted in Plaintiff riding the "E-Bike" when it malfunctioned. The result was catastrophic. After being thrown from Defendants' defective product, Plaintiff was immediately paralyzed, suffering multiple spine fractures, spinal cord injury, brain trauma and voluminous other life-altering injuries. He has suffered, and will continue to suffer, extraordinary pain, suffering, challenge, loss of independence, and distress for the remainder of his life. The damages for which defendants, and each of them, are responsible far exceed the jurisdictional minimum in this court.

7

**COMPLAINT FOR DAMAGES**

## CAUSE OF ACTION NO. 1

## STRICT PRODUCTS LIABILITY (MANUFACTURING DEFECT)

### (As to all Defendants)

23.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

24.    Plaintiff is informed, believes, and thereon alleges that defendants AMAZON.COM, XIAOHE ELECTRIC TECHNOLOGY, FUCARE, FUCARE BIKE, FUCARE ELECTRIC TECHNOLOGY and DOES 1 through 100, inclusive, manufactured, sold, marketed, and distributed into the stream of commerce the Fucare FW-11 "E-Bike" in a manner that was not sufficient or suited to the reasonable use to which it was represented to be intended, or thereafter used by plaintiff.

25.    At the time defendants manufactured, sold, marketed, and distributed into the stream of commerce the FW-11 "E-Bike" purchased and used by plaintiff, it contained defects and/or presented an unreasonable danger to plaintiff (and all other users) due to defective manufacture of the product.

26.    Defendants knew (or should have known) that the FW-11 "E-Bike" sold, distributed, and provided to plaintiff would be defective and malfunction. Defendants thus actually knew (or should have known) that the FW-11 "E-Bike's" malfunction or defect would foreseeably give rise to physical injury, suffering, debilitation, and other damages.

27.    Despite the fact defendants knew (or should have known) that plaintiff's FW-11 "E-Bike" was defective and/or would malfunction, defendants placed it into the stream of commerce without remedying the defects or manufacturing processes.

28.    Plaintiff's FW-11 "E-Bike" was sold, distributed, and/or provided to him in a manner reasonably anticipated by defendants and in a condition substantially similar to that in which it left defendants' control. Moreover, plaintiff used his FW-11 "E-Bike" in a manner reasonably anticipated by defendants and in a manner consistent with the specific marketing of the product by defendants. Defendants had no reason to believe that plaintiff would reasonably be apprised of the hidden dangers of the FW-11 "E-Bike" arising from the defects created by defendants' conduct.

8

**COMPLAINT FOR DAMAGES**

29. Defendants' tortious conduct as described above directly and proximately caused substantial injury and damage to plaintiff. Plaintiff has sustained serious personal injuries including physical injury and emotional distress, loss of mobility, and loss of independence.

30. As a proximate result of the defendants' tortious conduct, plaintiff was severely injured in his health, strength, and activity, sustaining shock and injury to his system and person, all of which injuries have caused and continue to cause plaintiff physical, mental, and nervous pain and suffering, and to his general damage in an amount that will be established according to proof at the time of trial.

31. As a further proximate result of the defendants' tortious conduct, it was necessary for plaintiff to receive medical care and treatment. Plaintiff incurred hospital and incidental expenses and will in the future be compelled to incur additional obligations in an amount that will be established according to proof at the time of trial.

32. As a further proximate result of the defendants' tortious conduct, plaintiff was required to employ physicians and surgeons to examine, treat, and care for his injuries and incurred medical and incidental expenses. In the future, he will be compelled to incur additional obligations. The exact amount of such expenses will be established according to proof at the time of trial.

33. Defendants' foregoing actions and inactions justify an award of punitive and exemplary damages. Defendants acted despicably, fraudulently, maliciously, oppressively, and in conscious disregard for the plaintiff's safety, in that defendants knew of the probable dangerous consequences of their conduct, yet they willfully failed to avoid those consequences.

## CAUSE OF ACTION NO. 2

## STRICT PRODUCTS LIABILITY (DESIGN DEFECT)

### (As to all Defendants)

34. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

35. Defendants have a duty to design products that are reasonably safe. Defendants designed, sold, marketed, and distributed into the stream of commerce the FW-11 "E-Bike"

9

**COMPLAINT FOR DAMAGES**

purchased and used by plaintiff. Plaintiff's FW-11 "E-Bike" contained design defects that presented an unreasonable danger to plaintiff (and all other users) due to such defects. The FW-11 "E-Bike" was inherently dangerous at the time it left defendants' possession and control and reached plaintiff in the same, or substantially similar, condition.

36.    Defendants knew (or should have known) that the FW-11 "E-Bike" sold, distributed, and provided to plaintiff was defectively designed and would malfunction. Defendants thus actually knew (or should have known) that the FW-11 "E-Bike's" malfunction or defect would foreseeably give rise to physical injury, suffering, debilitation, and other damages.

37.    Despite the fact defendants knew (or should have known) that plaintiff's FW-11 "E-Bike" was defectively designed and/or would malfunction, defendants placed the product into the stream of commerce without remedying the defective design. Moreover, the design defects at issue, and the risk and danger thus posed to plaintiff, outweighed any potential benefit of the design and outweighed the burden of securing or utilizing a practical and feasible alternative design. An ordinary prudent manufacturer, distributor, or seller, with the knowledge possessed by defendants, would not have placed the above-referenced product on the market.

38.    Plaintiff's FW-11 "E-Bike" was sold, distributed, and/or provided to him in a manner foreseeably anticipated by defendants, and in a condition substantially similar to that in which it left defendants' control. Moreover, plaintiff used his FW-11 "E-Bike" in a manner foreseeably anticipated by defendants and, in fact, in a manner consistent with the specific marketing of the product by defendants. Thus, defendants had no reason to believe the plaintiff would reasonably be apprised of the hidden dangers arising from the defects, nor would an ordinary consumer like plaintiff have expected to be subjected to such dangers and defects.

39.    Defendants' tortious conduct as described above directly and proximately caused substantial injury and damage to plaintiff. Plaintiff has sustained serious personal injuries including physical injury and emotional distress, loss of mobility, and loss of independence.

40.    As a proximate result of the defendants' tortious conduct, plaintiff was hurt and injured in his health, strength, and activity, sustaining shock and injury to his system and person, all

10
**COMPLAINT FOR DAMAGES**

of which injuries have caused and continue to cause plaintiff physical, mental, and nervous pain and suffering, and to his general damage in an amount that will be established according to proof at the time of trial.

41. As a further proximate result of the defendants' tortious conduct, it was necessary for plaintiff to receive medical care and treatment. Plaintiff incurred hospital and incidental expenses and will in the future be compelled to incur additional obligations in an amount that will be established according to proof at the time of trial.

42. As a further proximate result of the defendants' tortious conduct, plaintiff was required to employ physicians and surgeons to examine, treat, and care for his injuries and incurred medical and incidental expenses. In the future, he will be compelled to incur additional obligations. The exact amount of such expenses will be established according to proof at the time of trial.

43. Defendants' foregoing actions and inactions justify an award of punitive and exemplary damages. Defendants acted despicably, fraudulently, maliciously, oppressively, and in conscious disregard for the plaintiff's safety, in that defendants knew of the probable dangerous consequences of their conduct, yet they willfully failed to avoid those consequences.

## CAUSE OF ACTION NO. 3

### STRICT PRODUCTS LIABILITY (FAILURE TO WARN)

**(As to all Defendants)**

44. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

45. Plaintiff is informed, believes, and thereon alleges that defendants and Does 1-100 designed and/or manufactured the FW-11 "E-Bike" in a manner that was not sufficient or suited to the reasonable use to which plaintiff put it.

46. Plaintiff is informed, believes, and thereon alleges that defendants and Does 1-100 then sold, marketed, and distributed into the stream of commerce the FW-11 "E-Bike", purchased and used by plaintiff.

47. Plaintiff is informed, believes, and thereon alleges that the Fucare FW-11 "E-Bike"

11

**COMPLAINT FOR DAMAGES**

plaintiff purchased, contained defects and/or presented an unreasonable danger to plaintiff (and all other users) because defendants did not adequately warn of the dangers of their defective manufacture/design – even through there existed a risk of harm that was both actually known (and/or knowable) before the catastrophic failure in plaintiff's FW-11.

48.    Defendants actually knew (or should have known) that the FW-11 "E-Bike" sold, distributed, and provided to plaintiff would be defective and malfunction.  Defendants thus actually knew (or should have known) that the FW-11 "E-Bike's" malfunction or defect would foreseeably give rise to physical injury, suffering, debilitation, and other damages.

49.    Despite the fact that defendants actually knew (or should have known) that plaintiff's FW-11 "E-Bike" was defective and/or would malfunction, defendants placed the product into the stream of commerce without adequate warnings of its potential danger.

50.    Plaintiff's FW-11 "E-Bike" was sold, distributed, and/or provided to him in a manner reasonably anticipated by defendants, and in a condition substantially similar to that which was intended by defendants.  Moreover, plaintiff used his FW-11 "E-Bike" in a manner reasonably anticipated by defendants and, in fact, in a manner consistent with the specific marketing of the product by defendants.  Thus, defendants had no reason to believe plaintiff would reasonably be apprised of the hidden dangers of the FW-11 "E-Bike" without adequate warning by defendants.

51.    Defendants' tortious conduct as described above directly and proximately caused substantial injury and damage to plaintiff.  Plaintiff has sustained serious personal injuries including physical injury and emotional distress, loss of mobility, and loss of independence.

52.    As a proximate result of the defendants' tortious conduct, plaintiff was hurt and injured in his health, strength, and activity, sustaining shock and injury to his system and person, all of which injuries have caused and continue to cause plaintiff physical, mental, and nervous pain and suffering, and to his general damage in an amount that will be established according to proof at the time of trial.

53.    As a further proximate result of the defendants' tortious conduct, it was necessary for plaintiff to receive medical care and treatment.  Plaintiff incurred hospital and incidental expenses

**COMPLAINT FOR DAMAGES**

and will in the future be compelled to incur additional obligations in an amount that will be established according to proof at the time of trial.

54. As a further proximate result of the defendants' tortious conduct, plaintiff was required to employ physicians and surgeons to examine, treat, and care for his injuries and incurred medical and incidental expenses. In the future, he will be compelled to incur additional obligations. The exact amount of such expenses will be established according to proof at the time of trial.

55. Defendants' foregoing actions and inactions justify an award of punitive and exemplary damages. Defendants acted despicably, fraudulently, maliciously, oppressively, and in conscious disregard for the plaintiff's safety, in that defendants knew of the probable dangerous consequences of their conduct, yet they willfully failed to avoid those consequences.

## CAUSE OF ACTION NO. 4

### NEGLIGENCE

### (As to All Defendants)

56. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

57. Defendants had a duty to import, sell, distribute, inspect and provide to plaintiff a product that conformed to the expectations created by defendants, and which conformed to duties imposed by statute and applicable regulatory agencies. Defendants breached their duty by failing to provide plaintiff with a product that conformed to the expectations created by defendants, and which product failed to conform to duties imposed by statute and applicable regulatory agencies.

58. Defendants further had a duty to competently address and repair plaintiff's FW-11 when he brought problems with the FW-11 to defendants' attention. Defendants breached this duty by ignoring, mishandling and/or negligently addressing plaintiff's repeated requests that his FW-11 be repaired.

59. Defendants' tortious conduct as described above directly and proximately caused substantial injury and damage to plaintiff. Plaintiff has sustained serious personal injuries including physical injury and emotional distress, loss of mobility, and loss of independence, among other

13

**COMPLAINT FOR DAMAGES**

damages.

60. As a proximate result of defendants' tortious conduct, plaintiff was hurt and injured in his health, strength, and activity, sustaining shock and injury to his system and person, all of which injuries have caused and continue to cause plaintiff physical, mental, and nervous pain and suffering, and to his general damage in an amount that will be established according to proof at the time of trial.

61. As a further proximate result of defendants' tortious conduct, it was necessary for plaintiff to receive medical care and treatment. Plaintiff incurred hospital and incidental expenses and will in the future be compelled to incur additional obligations in an amount that will be established according to proof at the time of trial.

62. As a further proximate result of defendants' tortious conduct, plaintiff was required to employ physicians and surgeons to examine, treat, and care for his injuries and incurred medical and incidental expenses. In the future, he will be compelled to incur additional obligations. The exact amount of such expenses will be established according to proof at the time of trial.

63. Further, in knowingly and intentionally violating consumer product safety standards through the improper sale of the FW-11 "E-Bike" to plaintiff, among other violations of basic duties known to protect the consumer such as plaintiff, defendants acted with a willful and conscious disregard of the rights and safety of consumers such as plaintiff. Defendants were aware of their obligations, knew the requirements were in place to protect consumers such as plaintiff against injury, and authorized/ratified the continual violation of such requirements with reckless disregard of the rights and safety of consumers such as plaintiff. Such conduct warrants an award of exemplary damages.

## CAUSE OF ACTION NO. 5

## INTENTIONAL MISREPRESENTATION (FRAUD)

### (As to all Defendants)

64. Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

14

**COMPLAINT FOR DAMAGES**

65.    Defendants supplied false information to the public, and specifically plaintiff, regarding the safety and legality of the Fucare FW-11 "E-Bike". Defendants provided this false information of material fact to induce the public, and specifically plaintiff, to purchase and use the FW-11 "E-Bike".

66.    Defendants knew or should have known that the information they were supplying to the public, and specifically plaintiff, was false.

67.    Plaintiff relied on defendants' false and inaccurate marketing and other statements, and thereafter became a consumer of the FW-11 "E-Bike". Defendants' actions and inactions therefore substantially contributed to and/or caused plaintiff to use a defective, dangerous and illegal product which caused serious injury and harm, whether physical, emotional, or economic.

68.    Defendants' tortious conduct as described above directly and proximately caused substantial injury and damage to plaintiff. Plaintiff has sustained serious personal injuries including physical injury and emotional distress, loss of mobility, and loss of independence.

69.    As a proximate result of the defendants' tortious conduct, plaintiff was hurt and injured in his health, strength, and activity, sustaining shock and injury to his system and person, all of which injuries have caused and continue to cause plaintiff physical, mental, and nervous pain and suffering, and to his general damage in an amount that will be established according to proof at the time of trial.

70.    As a further proximate result of the defendants' tortious conduct, it was necessary for Plaintiff to receive medical care and treatment. Plaintiff incurred hospital and incidental expenses and will in the future be compelled to incur additional obligations in an amount that will be established according to proof at the time of trial.

71.    As a further proximate result of the defendants' tortious conduct, plaintiff was required to employ physicians and surgeons to examine, treat, and care for his injuries and incurred medical and incidental expenses. In the future, he will be compelled to incur additional obligations. The exact amount of such expenses will be established according to proof at the time of trial.

72.    Defendants' foregoing actions and inactions justify an award of punitive and

15

**COMPLAINT FOR DAMAGES**

exemplary damages. Defendants acted despicably, fraudulently, maliciously, oppressively, and in conscious disregard for the plaintiff's safety, in that defendants knew of the probable dangerous consequences of their conduct, yet they willfully failed to avoid those consequences.

## CAUSE OF ACTION NO. 6

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(As to all Defendants)**

73.    Plaintiff incorporates by reference, as if fully set forth herein, each and every allegation set forth in the preceding paragraphs and further alleges as follows:

74.    Defendants designed, manufactured, marketed, and distributed into the stream of commerce the FW-11 "E-Bike" that was purchased and used by plaintiff.

75.    At the time of such design, manufacture, marketing, and distribution, defendants knew the use for which the product was intended, and impliedly warranted it to be of merchantable quality and safe for use.

76.    Plaintiff reasonably relied upon the skill and judgment of defendants as to whether the FW-11 "E-Bike" was of merchantable quality and safe for its intended use.

77.    Contrary to defendants' implied warranties, the FW-11 "E-Bike" was not of merchantable quality or safe for its intended use, because the product was unreasonably dangerous as described herein.

78.    Defendants' tortious conduct as described above directly and proximately caused substantial injury and damage to plaintiff. Plaintiff has sustained serious personal injuries including physical injury and emotional distress, loss of mobility, and loss of independence.

79.    As a proximate result of the defendants' tortious conduct, plaintiff was hurt and injured in his health, strength, and activity, sustaining shock and injury to his system and person, all of which injuries have caused and continue to cause plaintiff physical, mental, and nervous pain and suffering, and to his general damage in an amount that will be established according to proof at the time of trial.

80.    As a further proximate result of the defendants' tortious conduct, it was necessary for

16

**COMPLAINT FOR DAMAGES**

plaintiff to receive medical care and treatment. Plaintiff incurred hospital and incidental expenses and will in the future be compelled to incur additional obligations in an amount that will be established according to proof at the time of trial.

81. As a further proximate result of the defendants' tortious conduct, plaintiff was required to employ physicians and surgeons to examine, treat, and care for his injuries and incurred medical and incidental expenses. In the future, he will be compelled to incur additional obligations. The exact amount of such expenses will be established according to proof at the time of trial.

WHEREFORE, plaintiff prays for judgment against the defendants, and each of them, as follows:

1. For general damages, past and future, according to proof;

2. For loss of earnings, healthcare expenses, and all incidental and other economic damages, past and future, according to proof;

3. For the costs and expenses of this litigation to plaintiff;

4. For attorney fees to plaintiff as may be recoverable by law;

5. For punitive/exemplary damages;

6. Granting all such other relief as the Court deems necessary, just, and proper.

Dated: August 18, 2025                     Fozi Dwork & Modafferi, LLP

By: _____
Golnar J. Fozi
Jeremy M. Dwork
Attorneys for Plaintiff,
Kevin Read

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial in this action.

Dated: August 18, 2025                     Fozi Dwork & Modafferi, LLP

By: _____
Golnar J. Fozi
Jeremy M. Dwork
Attorneys for Plaintiff,
Kevin Read

17

**COMPLAINT FOR DAMAGES**